# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| NOEMI RODRIGUEZ, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:13-CV-458-PRC |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Noemi Rodriguez on December 16, 2013, and Plaintiff's Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 13], filed on May 2, 2014. This matter became fully briefed on August 22, 2014. Plaintiff challenges the Social Security Administration's determination that she is not disabled under the Social Security Act.

## I. Background

The Court forgoes a detailed recitation of Plaintiff's medical background. Those looking for a discussion of her medical records are directed to the summaries attached to both Plaintiff's opening brief and to the Commissioner's response. Rather than reiterating those summaries, the Court gives a brief overview of Plaintiff's medical issues and how the proceedings have unfolded thus far.

While Plaintiff suffers from many ailments, only her psychological difficulties are at issue on this appeal. Plaintiff suffers from a number of mental health problems related to bipolar disorder, for which she has been prescribed medications and has received both inpatient and outpatient treatment.

She began her quest for disability benefits in 2010 when she filed an application for disability insurance benefits and a separate application for supplemental security income. Both applications

alleged that she'd been disabled since October 15, 2010. Both were denied initially and upon reconsideration. She then sought a hearing with an Administrative Law Judge (ALJ), which took place on July 6, 2012. On July 26, 2012, the ALJ issued a written decision denying Plaintiff's claims for disability benefits, making the following findings.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. Although the claimant engaged in substantial gainful activity after October 15, 2010, her alleged onset date, that work activity was an unsuccessful work attempt.

3. The claimant has the following severe impairments: diabetes mellitus-type II, status post appendectomy, obesity, chronic obstructive pulmonary disease (COPD), hypertension, and bipolar disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with some additional limitations. More specifically, she is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. She is limited to no more than occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs; she can never climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to unprotected heights, slick and uneven terrain, and pulmonary irritants such as dust, fumes, odors, and gases. She is further limited to performing simple, routine, and repetitive tasks, and she can maintain no more than occasional contact with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work.

> 7. The claimant was born in 1961 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2010, through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On December 16, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by

substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

4

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Disability Standard

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not

5

disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

Plaintiff contends that the ALJ made a number of errors in evaluating her mental impairments and credibility. Plaintiff's central argument is that the ALJ's decision ignored a great deal of evidence that was favorable to her claim. Specifically, she contends that the ALJ's discussion of the opinion evidence, the credibility determination, the listing analysis, and the RFC

6

determination improperly relied on the opinion of state-agency psychological consultant Stacia Hill, Ph.D., and ignored a number of records that were favorable to Plaintiff's claim. The Court considers the arguments in turn.

## A. Opinion Evidence

As part of its process of determining whether Plaintiff was entitled to disability benefits, the Agency hired a psychologist, Dr. Stacia Hill, Ph.D., to perform an evaluation. Dr. Hill found in an August 4, 2011 assessment that Plaintiff was mildly limited in her activities of daily living and moderately limited in both her social functioning and her ability to maintain concentration, persistence, or pace. She further noted that Plaintiff had moderate limitations in the following other areas: her ability to understand, remember, and carry out detailed instructions; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; her ability to perform at a consistent pace without an unreasonable number and length of rest periods; and her ability to interact appropriately with the general public.[1]

The ALJ explained that he gave this opinion great weight to the extent it was consistent with the RFC and the evidence in the record.[2] That evidence, the ALJ said, showed that, although Plaintiff had received ongoing treatment for bipolar disorder, she consistently responded well to medication and therapy.

---

[1] Dr. Hill's notes are consistent in their puzzling use of masculine pronouns to refer to Plaintiff, who is a woman.

[2] Giving opinion evidence great weight to the extent it is consistent with the RFC is tantamount to saying "I give great weight to this opinion to the extent I agree with it." Furthermore, it suggests that the RFC is somehow logically prior to the opinion evidence, when the opposite is true: the RFC is the ALJ's conclusion and is based on his review of the record. *Cf. Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012).

But, as Plaintiff points out, Dr. Hill's opinion was given before a great deal of evidence came into being. While the ALJ did discuss some of the subsequent evidence, including Plaintiff's three later inpatient psychiatric hospitalizations, his decision ignored a great deal of later evidence that is favorable to Plaintiff. This evidence includes numerous progress notes from her case manager indicating that Plaintiff had—contrary to Dr. Hill's assessment—more than mild difficulties in activities of daily living. The case manager stated over the course of a number of records that Plaintiff needed help with the most basic aspects of independent living such as finding an affordable grocery store, accessing public transportation, buying and stocking food, and paying bills. These limitations are also supported by Plaintiff's hearing testimony (also not mentioned by the ALJ) that she would sometimes go for three days without showering and needed reminders from her case manager to bathe or comb her hair. The case manager also noted that Plaintiff needed help getting her medical records and medication, as well as signing up for medicaid and food stamps.

The Commissioner contends that there is no error because Dr. Hill's opinion is consistent with the record, pointing out that the only medical opinion contradicting Dr. Hill's was given little weight by the ALJ because of internal inconsistency. And in another portion of her brief the Commissioner notes that Plaintiff, who has been represented by counsel throughout this lengthy process, never asked the Agency to procure additional opinion evidence. In other circumstances these arguments might be effective. But there is a deeper problem here that must be addressed. When the ALJ gave great weight to Dr. Hill's opinion, he did so just insofar as that opinion was consistent with his own evaluation of the record. But there is no indication that he took into account the contrary evidence discussed above. While he did not have to discuss every piece of evidence, leaving out the progress notes, that Plaintiff lived in an assisted living situation, and that she

8

depended on a case manager constitutes a failure to build an accurate and logical bridge in support of his decision to give Dr. Hill's opinion great weight. *Clifford*, 227 F.3d 863, 872 (7th Cir. 2000); *O'Connor-Spinner*, 627 F.3d at 618. "[A]n ALJ may not ignore an entire line of evidence that [was] contrary to [his] findings." *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999). This case must therefore be remanded.

As for Plaintiff's objection that the ALJ was not permitted to give Dr. Hill's opinion great weight because that opinion was unsupported, the Court is not in a position to determine whether this was an error. Had the ALJ provided an adequate discussion of the evidence, then his decision to give Dr. Hill's opinion great weight to the extent it was consistent with that evidence would not have posed a problem (provided, of course, that he gave that opinion great weight only to the extent it was *in fact* consistent with a satisfactory account of the record). It might well be a good idea for the Agency to procure a new psychological evaluation on remand that could take into account the full record, but the Court leaves this decision to the Agency.

## B. Credibility

Similar flaws plague the ALJ's credibility analysis. He found Plaintiff to be less than fully credible for three reasons: (1) she was able to perform a considerable number of activities of daily living; (2) the medical opinions in the record did not support the level of restrictions she claimed; and (3) she has a history of non-compliance.

As mentioned above, the ALJ ignored a great deal evidence that suggested Plaintiff had significant limitations in her activities of daily living. Holding these activities against her without discussing these limitations was an error. *See Craft*, 539 F.3d at 680. Likewise, as the Commissioner concedes, the ALJ erred when he drew adverse inferences about Plaintiff's credibility from her non-

compliance without first exploring what reasons Plaintiff might have had for these failures. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft*, 539 F.3d at 679. Finally, as discussed above, the ALJ's discussion of the opinion evidence was marred by an inadequate consideration of the underlying record. Holding the opinion evidence against Plaintiff was accordingly also an error. The ALJ's credibility determination was hence "patently wrong" and should be corrected on remand. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)) (internal quotation marks omitted); *see also Prochaska*, 454 F.3d at 738.

### C. Listing Analysis

As mentioned above, the Step Three analysis requires the ALJ to determine whether the claimant meets one of the listed impairments provided in an appendix to the Agency's regulations. The ALJ found that Plaintiff did not meet any of the listing requirements and accordingly went on to the fourth step. Plaintiff thinks that this was an error, arguing the ALJ's analysis of whether Plaintiff met the requirements of Listing 12.04 ignored contrary evidence and failed to explain why the parts of the record the ALJ relied on were not overcome by that contrary evidence.

Listing 12.04 deals with affective disorders. At issue here are the requirements of paragraph B of the listing. To satisfy this paragraph's requirements, a claimant must show that she suffers from at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended

> duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff was mildly limited in her activities of daily living, moderately limited in her social functioning, and moderately limited in her ability to maintain concentration, persistence, or pace. He also concluded that she had experienced no episodes of decompensation. Plaintiff contends that the ALJ erred in reaching each of these conclusions. The Court considers each in turn.

As discussed, the ALJ erred by failing to consider evidence about the limitations on Plaintiff's ability to perform activities of daily living. On remand, the listing analysis should take this evidence into account.

As for Plaintiff's social limitations, the ALJ did not discuss evidence that could suggest greater than moderate limitations. For example, Plaintiff has often said that she hears voices telling her to stab others. She reported often threatening to stab people and testified at the hearing that she once tried to stab her son-in-law. There are also indications that she gets easily angered. On remand, this favorable evidence should be considered in evaluating her social limitations.

Regarding concentration, persistence, or pace, the ALJ noted that, despite allegations of memory and concentration difficulties, Plaintiff had no trouble relating her personal and medical history at the hearing. This mischarachterizes Plaintiff's testimony somewhat. Her testimony was, on the whole, cogent. But it isn't true that she had *no* trouble relating her personal and medical history. She was unable to recall the names of the medications she was taking, she said she was not sure what she did for enjoyment, and she told the ALJ that she weighed 162 pounds. Regarding this last statement, the ALJ asked whether she was not thinking 250 pounds, to which Plaintiff replied "Oh, yeah, 250, 260." (AR 51). This isn't a significant error, but it should nevertheless be cleared

up on remand.

What's missing is more important. For example, the ALJ's discussion did not discuss records noting that Plaintiff would lose focus, would need redirection because of distraction, and had difficulty understanding the difference between rational and irrational thoughts. Likewise, the ALJ nowhere mentioned Dr. McKian's opinion that Plaintiff was not very bright, did not have much insight into her problems, did not have much understanding of what her medications were for, had to use fingers to count, and made errors in basic calculation. A more thorough discussion of concentration, persistence, or pace is warranted on remand.

The Court next turns to consider the ALJ's analysis of whether Plaintiff suffered from episodes of decompensation. An episode of decompensation is a period of time when a claimant has a temporary increase in symptoms accompanied by a loss of adaptive functioning in the ability to do activities of daily living; the ability to maintain social relationships; or the ability to maintain concentration persistence, or pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The Agency infers the existence of these episodes by looking for signs, including increases in medication as well as transitions to more structured psychological support such as hospitalization or placement in a halfway house. *Id.* To meet the listing threshold, moreover, these episodes have to be of "extended duration"—at least two weeks—and must occur, on average, every four months. *Id.* When there are more frequent episodes of shorter duration, the Agency must use judgment to determine if the impact is equivalent. *Id.*

Plaintiff points out that she was hospitalized four times from June 2011 through February 2012. She argues that, though she was never hospitalized for more than one week, the ALJ should have at least discussed the possibility that this was equivalent to the listing level requirements. The

12

point is well taken. She was hospitalized four times in a seven month period, which is close enough to the paragraph B (and related paragraph C) criteria that, should this issue arise on remand, the ALJ should provide some explanation regarding equivalency.

### D. RFC

In making his RFC finding, the ALJ concluded that Plaintiff was limited to simple, routine, and repetitive tasks and said that she could maintain no more than occasional contact with coworkers, supervisors, and the public. Plaintiff argues that this conclusion is unsupported because the ALJ failed to address all of her non-exertional functional limitations. The ALJ's RFC determination regarding mental limitations is downstream from the listing-level analysis as well as the decision to find Plaintiff less than fully credible and his decision to give great weight to the opinion of Dr. Hill. The limitations in the RFC track closely to those put forward by Dr. Hill. Since the ALJ erred in making those determinations, the RFC must also be reconsidered on remand. The RFC analysis suffers from the same underlying problem, namely, the failure to discuss significant favorable evidence.

Plaintiff also objects that, in crafting the RFC, the ALJ did not address the limitations put forward by treating physician Dr. Rajnishpaul Kular, who opined that Plaintiff would be off-task at work at least twenty-five percent of the time. Plaintiff's argument on this point is a mere two sentences long. Though she does not put it this way, the objection is to the weight given to a treating physician's opinion.

The so-called treating physician rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is well-supported by acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence."

*Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (citing 20 C.F.R. § 404.1527) (internal quotation marks omitted). If an opinion fails to meet either of these criteria, the ALJ must decide what weight to give it by considering "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561 (citing 20 C.F.R § 404.1527; *Bauer v. Astrue*, 532 F.3d at 608; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)).

Insofar as the opinion was deemed inconsistent with the record as a whole, it must be reconsidered on remand for the same reasons discussed above. As for internal inconsistency, the ALJ noted that, despite saying that Plaintiff could not stay on task more than twenty-five percent of the workday, Dr. Kular also said that Plaintiff had, at worst, limited, but satisfactory, capacity to do all the work-related activities listed on the checklist he filled out. The ALJ's conclusion that this inconsistency undermined Dr. Kular's opinion was reasonable, and including it was not an error. Nevertheless, the ALJ's discussion of the weight given to Dr. Kular's opinion would have benefitted from a more detailed explanation, showing that he had considered all of the factors put forward in 20 C.F.R § 404.1527.

## V. Conclusion

Based on the foregoing, the Court **GRANTS** the relief sought in Plaintiff's Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [DE 13], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 2nd day of February, 2015.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY

cc: All counsel of record